UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                                              No. 1:16-CR-226

vs.                                                                    Hon. Paul L. Maloney
                                                                       U.S. District Judge
JERRY LEE AKERS,

    Defendant.
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

For more than five years, Defendant Jerry Akers and his co-conspirator, Kevin Grimm, stole $1.77 million from Herman Miller Inc. ("HMI") after Akers breached his duty of loyalty to his employer and abused the trust the company placed in him. Unlike the desperate bank robber who desperately and impulsively passes a demand note for a handful of cash, Akers and Grimm repeatedly and systematically purloined tens of thousands of dollars from HMI's coffers each month. And when other company employees started asking questions about Grimm's company, KJ Gas Transportation, Akers tried to assuage their concerns and eventually terminated the fraudulent vendor relationship in a desperate attempt to conceal the fraudulent invoice scheme.

To his credit, however, Akers immediately confessed to the scheme when he was confronted by investigators and assisted law enforcement with its investigation of the offense. Grimm did not. To reward Akers's substantial assistance to law enforcement in the investigation and prosecution of Grimm, the government has filed a motion seeking a four-level downward departure. (R.20, PageID.91-94)

The most unusual feature of this offense is that Akers, the insider who largely facilitated the fraud, obtained a relatively modest amount of the illegal proceeds. Akers occasionally received

cash payments from Grimm that totaled far less than an equal share of the illegal proceeds. In contrast, Grimm spent $170,000 on a 49 foot sailboat, spent substantial sums on a new truck and tractor, and squirreled away most of the net proceeds into various bank and investment accounts held in his name. Akers did not have access to those accounts. Nevertheless, Akers's role in the offense was substantial: He organized most of the elements of the scheme. He provided natural gas data to Grimm, which Grimm used for his fake invoices. Akers approved all of the fraudulent payments each month for five years. He took steps to conceal the fraud when other employees began asking questions. And he certainly profited from the crime by purchasing his own boat and dock for approximately $48,000 and spending the remaining cash he received from Grimm throughout the scheme.

The government submits this memorandum to: (1) address Defendant's objection to the advisory Guideline scoring in the presentence investigation report; (2) object to the probation officer's assertion that joint and several liability for restitution may not be appropriate in this case; and (3) recommend a sentence of imprisonment within the advisory Sentencing Guideline range.

### I. Defendant was an Organizer of Criminal Activity and the Two-Level Enhancement in USSG 3B1.1(c) (Aggravating Role) Should Be Applied in this Case.

Defendant objects to the two-level enhancement in USSG § 3B1.1(c) for his role in organizing the scheme to defraud HMI. The government believes the adjustment for his role in the offense is correctly scored. The provision states as follows: "If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels." USSG § 3B1.1(c). To qualify, Defendant must have been the organizer of "one or more other participants." *Id.*, Application Note 2. A "participant" is a person "criminally responsible for the commission of the offense," even if that person has not been convicted. *Id.*

Application Note 1. There can be more than one organizer of criminal activity. *Id.* Application Note 4.

The Guidelines instruct the Court to consider the following factors in determining whether a participant is a leader or organizer: "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." *Id.* This list is not intended to be exclusive. *Id.*

"The primary question for a § 3B1.1(c) enhancement is whether the defendant exerted control over at least one individual within a criminal organization." *United States v. Tanner*, 837 F.3d 596, 603 (6th Cir. 2016). Inviting another person to participate in a fraud scheme, using that person to commit the fraud, and planning and participating in the scheme with the other person is sufficient activity to apply the organizer enhancement. *Id.* at 603-604. The defendant need not be the "brainchild" of the fraud scheme to be an organizer. *Id.* at 604. Evidence demonstrating who claimed entitlement to a larger share of the fruits of the crime is not, by itself, a dispositive factor. A defendant's expertise in the subject matter of the crime also is a relevant factor to consider. *See United States v. Kelly*, 204 F.3d 652, 658 (6th Cir. 2000). The fact that another person played an aggravating role in the crime does not prevent application of an organizer enhancement. *Id.*

In this case, Akers exercised sufficient control over the scheme and Grimm to be considered an organizer under § 3B1.1(c). The evidence demonstrates that Akers, as the company's Senior Energy Manager:

- Used his expertise in the nomination and acquisition of natural gas for HMI to devise the scheme to defraud;

3

- Assisted with setting up a vendor account at HMI to enable Grimm to submit invoices for payment (Gov. Exhibit 1);

- Advised Grimm how to format the KJ Gas Transportation invoices to allow Grimm to bill for services and product never provided (Gov. Exhibit 2);

- Supplied Grimm with monthly billing data to include in the fraudulent invoices to submit to HMI's accounts payable office each month (Gov. Exhibit 3);

- Attempted to hide the fraud from other HMI employees when they questioned him about the goods and services provided by KJ Gas Transportation and why it was improperly billing state sales tax on natural gas (Gov. Exhibit 4); and

- Terminated the vendor relationship with Grimm to end the fraud and avoid detection (Gov. Exhibit 5).

*See also* PSR ¶ 19, 20, 22. Defendant Akers played a key role in planning and organizing the offense using Grimm as his means to steal money from the company. His role in the offense implicates several of the factors outlined in Application Note 4 to § 3B1.1. The government concedes, however, that Grimm in fact retained a larger share of the fruits of the crime, which is a factor that points to Grimm as an organizer.

Finally, applying the organizer enhancement in § 3B1.1 together with the abuse of trust enhancement in § 3B1.3 does not result in impermissible "double-counting." First, as the text of § 3B1.3 makes plain, "[i]f [a § 3B1.3] adjustment is based upon an abuse of a position of trust, it may be employed in addition to an adjustment under § 3B1.1 (Aggravating Role)." What is impermissible is the application of an aggravating role enhancement when the enhancement for using a special skill is applied. In *United States v. Fata*, 650 F. App'x 260, 264-65 (6th Cir. 2016), the Sixth Circuit recently affirmed the dual application of the aggravating role enhancement in §

3B1.1 and the abuse of trust or use of special skill enhancement in § 3B1.2, even where there was evidence of both abuse of trust and use of a special skill. *See also United States v. Kuhn*, 345 F.3d 431, 437-38 (6th Cir. 2003) (district court abused its discretion in finding that dual application of §§ 3B1.1(c) and 3B1.3 for abuse of public trust constitutes double-counting).

## II. Defendant's Restitution Obligation Should Be Joint and Several with Co-Conspirator Grimm's Anticipated Restitution Obligation.

In the revised presentence investigation report, the probation officer added the following statement: "NOTE: This case may not be appropriate for joint and several payment of restitution. Restitution payment amounts may be modified by the Court at the time of sentencing." (bold emphasis deleted) (R.19: PSR at ¶126, PageID.87) There is no explanation accompanying this assertion. The government respectfully disagrees with the notation and objects to a restitution order that is not joint and several with the anticipated restitution order in co-conspirator Grimm's case, WDMI No. 1:17:CR-45.

If two or more defendants have contributed to the loss suffered by a victim, the Court may order each defendant liable for payment of the full amount of restitution. *See* 18 U.S.C. § 3664(h). Alternatively, the Court can apportion liability among the defendants "to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." *Id.* The Court is <u>not</u> required to determine the relative culpability of each defendant in fashioning its restitution order, nor is it required to apportion the restitution liability among defendants. *See United States v. Bogart*, 576 F.3d 565, 575-76 (6th Cir. 2009).

Both Defendants should be liable for the full amount owed because the total loss suffered by HMI was directly caused by, and known to, both Defendants throughout the duration of the conspiracy. First, the full amount of the loss was known to Defendant Akers because he was the person who advised Grimm each month how much to fraudulently bill HMI for services never

5

provided and approved payment on the fraudulent invoices. The fact that Grimm was the conspirator who spent more of the proceeds and maintained possession of a larger portion of the funds throughout the scheme does not, by itself, weigh heavily in favor of apportioning restitution.

Second, much of the loss has already been informally "apportioned" among the two Defendants because Grimm has returned $1,106,429 to HMI's insurer and Akers has returned $90,000 to the insurer as of March 28, 2017. (PSR ¶ 49, PageID.75) Of the $1.77 million total loss, the remaining balance due to the insurer and HMI is $576,297.14. (*Id.*) Additionally, there is evidence that there was an informal agreement to split the net after-tax proceeds, and that distributions would occur at the end of each year. (PSR ¶ 36, PageID.73) E-mail evidence recovered by investigators demonstrates that Akers simply had to ask Grimm for money and Grimm provided it to him. (Gov. Exhibit 6) Just because Akers obtained the cash on an as-requested basis instead of a regular distribution does not relieve him of responsibility for the entire loss.

In light of Akers's role in the scheme, his full knowledge of the total loss caused by the scheme to defraud during the pendency of the offense, Grimm's understanding of the distribution of proceeds, and the fact that a large percentage of the illegal proceeds already has been repaid by Grimm, Akers and Grimm should each be held responsible for the remaining $576,297.14. The fact that Akers allowed Grimm to maintain possession of the vast majority of the proceeds does not ameliorate his contribution to the loss. Finally, should one of the defendants be unable to contribute toward restitution for whatever reason, the government would like the ability to pursue the remaining balance from the other defendant to maximize the potential for a complete recovery for the victims.

### III. Sentencing Recommendation

For the reasons outlined above and in its motion for downward departure, and after taking into account the relevant sentencing factors in 18 U.S.C. § 3553(a), the government respectfully requests that this Court: (1) sustain the advisory Sentencing Guidelines range of 51-63 months (24/I) as calculated in the presentence investigation report; (2) grant the government's motion for a four-level downward departure for substantial assistance to law enforcement; (3) sentence Defendant Akers to a term of prison within the revised applicable advisory range of 33 to 41 months; and (4) order full restitution to the victims in the amount of $576,297.14, joint and several with Grimm's restitution obligation in WDMI Case No. 1:17:CR-45.

                                                     Respectfully submitted,

                                                     ANDREW BYERLY BIRGE
                                                     Acting United States Attorney

Dated: April 20, 2017                    /s/ *Christopher M. O'Connor*
                                                     CHRISTOPHER M. O'CONNOR
                                                     Assistant United States Attorney
                                                     United States Attorney's Office
                                                     P.O. Box 208
                                                     Grand Rapids, Michigan 49501-0208
                                                     (616) 456-2404